**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:19-cv-21684-KMM/Becerra

RONEN NAHMANI,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION[1] ON RONEN NAHMANI'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

**THIS CAUSE** came before the Court upon Ronen Nahmani's ("Movant" or "Nahmani") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and Supplement therein (the "Motion"). ECF No. [1]. The United States of America (the "Government") responded to the Motion (the "Response"). ECF No. [8]. Nahmani did not file a reply and did not request an evidentiary hearing. The Motion is ripe for disposition. After careful review of the Motion, the relevant authorities, the record, and for the reasons discussed below, it is hereby **RECOMMENDED** that the Motion, ECF No. [1], be **DENIED**.

### I.    BACKGROUND

On December 19, 2014, Nahmani was charged in a single-count Indictment with conspiracy to possess with intent to distribute controlled substances and controlled substance analogues, in violation of Title 21, United States Code, Section 846. Criminal ECF No. [3] at 1.[2]

---

[1] This matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge. ECF No. [4].

[2] All citations to "Criminal ECF" refer to the docket in Nahmani's underlying criminal case, *United States v. Nahmani*, No. 1:14-cr-20926-KMM.

The controlled substances and the controlled substance analogues listed in the Indictment included AB-Fubinaca, PB-22, and XLR11, and THJ-2201, 5-Chloro-UR-144, and 5-Bromo-UR-144. *Id.* at 2. Although the Indictment charged one conspiracy count, the distribution of controlled substances and the distribution of controlled substance analogues were charged as two different objects of the conspiracy. *Id.* at 1.

The underlying criminal case was heavily litigated. Indeed, Nahmani filed various pre-trial motions. Specifically, he filed the following: (1) Motion to Compel Any and All Documentation Relating to the Chemist's Analysis, Including Information Concerning Maintenance, Calibration, and Certification of the Equipment Used and Memorandum of Law, Criminal ECF No. [23]; (2) Motion to Compel Any and All Documents Relating to Training and/or Certifications for either Detective/Canine Handler Eric Davis (ID#188) and K-9 Lex Pertaining to Narcotics Identification and Detection, Including But Not Limited to Synthetic Marijuana and Memorandum of Law, Criminal ECF No. [24]; (3) Motion to Suppress Physical Evidence and Statements Made by Him Based Upon an Subsequent Illegal Search and Seizure with Incorporated Memorandum of Law and Request for Evidentiary Hearing and Motion for Leave to File Out of Time, Criminal ECF No. [49]; (4) Motion to Suppress Physical Evidence and Statements Made by Him Based Upon an Subsequent Illegal Search and Seizure with Incorporated Memorandum of Law and Request for a Hearing Pursuant to *Franks v. Delaware* and Motion for Leave to File out of Time, Criminal ECF No. [50]; (5) Motion to Exclude Government's Expert, Criminal ECF No. [51]; (6) Amended/Corrected and Supplemental Motion to Suppress Physical Evidence and Statements Made by Him Based Upon a Subsequent Illegal Search and Seizure with Incorporated Memorandum of Law Pursuant to *Franks v. Delaware*, Criminal ECF No. [65]; (7) Motion in Limine to Exclude Mention of "Death, Coma, Stroke, and Seizures," Criminal ECF No. [95]; and

(8) Motion in Limine to Exclude Bad Character Evidence Which Predates the Indictment, seeking to exclude the testimony of Kyle Hurley, Criminal ECF No. [115].  The Court denied these motions,[3] with the exception of the Motion to Compel, Criminal ECF No. [23], which the Court granted in part, ordering the Government to produce: (1) the "table of contents, and any index or glossary, for the DEA [Laboratory Information System (LIMS")] manual;" (2) "any communications in the LIMS system regarding the analysis of any substance seized in this case;" (3) documents pertaining to the "annual internal and external proficiency testing" of DEA chemists "who analyzed substances seized in this case;" (4) "records that concern the [] competency, integrity or credibility" of chemists who analyzed substances in this case; (5) "the results of the most recent accreditation of the DEA laboratory in which substances seized in this case were analyzed" and corrective action reports pertaining to the laboratory; and (6) the control number and expiration date "for each standard reference sample used in analyzing the substances seized in this case."  ECF No. [39] at 1–3.

After a six-day trial, the jury returned a guilty verdict as to Count I of the Indictment, specifically finding Nahmani guilty of both "the first object of the conspiracy, namely, to possess with intent to distribute controlled substances," and the "second object of the conspiracy, namely, to possess with intent to distribute controlled substance analogues."  Criminal ECF No. [129]. Following the verdict, Nahmani filed a Motion for Judgment of Acquittal Under Fed. R. Crim. P. 29, and, Alternatively, For a New Trial Under Fed. R. Crim. P. 33 and Incorporated Memorandum of Law.  ECF No. [132].  Therein, Nahmani arguing that he was entitled to a new trial because the Court erred in: (1) admitting the testimony of DEA chemists because the Government did not first produce a complete copy of the LIMS manual and maintenance records; (2) admitting the

---

[3] *See* Criminal ECF Nos. [38], [107], [109], [110], [111], [119].

testimony of Kyle Hurley to the extent it included facts outside the scope of the conspiracy, as charged in the Indictment; (3) denying his motion to suppress evidence seized from the storage unit; (4) responding to the jury's question regarding whether Nahmani had to possess all of the drugs charged in the Indictment, or whether one substance was enough. *Id.* at 2. Additionally, Nahmani argued that he was entitled to judgment of acquittal because there was insufficient evidence at trial as to: (1) the conspiracy as charged in the indictment, (2) Nahmani's membership in the conspiracy, (3) Nahmani's knowledge that the substances contained the elements that the Government alleged rendered them subject to controlled scheduling; (4) the existence of another conspirator as to the charged conspiracy; and (5) the "illegal controlled nature of the substances." *Id.* at 2–3. The Court denied that motion, ruling that: (1) the Court's Order on the motion to compel, Criminal ECF No. [39], did not require the production of maintenance records and so the Government complied with that Order; (2) Hurley's testimony was within the scope of the conspiracy, since the "indictment charged Nahmani with drug trafficking [beginning] on or about April 1, 2014," which "is four days after Hurley was arrested on March 28, 2014;" (3) "the search of the storage unit was valid and based on a validly issued search warrant;" and (4) the Court "directly answered the jury's question with an accurate statement of the law;" and (5) there was substantial evidence to convict Nahmani. Criminal ECF No. [145].

Nahmani also filed a Motion to Dismiss Indictment, arguing that the indictment was so defective that it failed to invoke federal criminal jurisdiction and failed to state an offense. Criminal ECF No. [153]. The Court denied the motion, ruling that it was time-barred under Federal Rule of Civil Procedure 12(b)(3) and, moreover: (1) Nahmani's argument that "[t]he indictment clearly does not properly invoke application of the 20-year statutory maximum sentence under 21 U.S.C. 841(b)(1)(C) . . . [because it] charged merely a conspiracy to possess a

controlled substance, exposing the defendant to no more than a 1-year statutory maximum under §
841(b)(1)(E)" was meritless because "that section says, in the case of any controlled substance in
schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years;"
(2) "[n]umerous courts around the country have recognized [a conspiracy concerning controlled
substance analogues] as a federal offense; (3) the indictment did not fail to identify the specific
substances alleged in the conspiracy, but rather explicitly listed them; and (4) "when no weight is
alleged in an indictment as to a particular schedule I or II controlled substance, as is the case here,
the penalty provision of 21 U.S.C. § 841(b)(1)(C) (0-20 years) is the catch-all for any quantity of
schedule I or II drugs."  Criminal ECF No. [155].

According to the Pre-Sentence Investigation Report (the "PSI"), Nahmani faced "a
guideline imprisonment term of life, based upon a total offense level of 43 and a criminal history
category of I," although the PSI "capped Nahmani's sentence at 240 months' imprisonment,
pursuant to the statutory maximum penalty established by 21 U.S.C. § 841(b)(1)(C) and
incorporated into his guideline sentence pursuant to USSG § 5G1.1(a)."  ECF No. [8] at 2 (citing
PSI ¶¶ 72–73).  On October 2, 2015, Nahmani filed a Memorandum in Aid of Sentencing and
Incorporated Objections to Pre Sentence Investigative Report, requesting a downward variance for
his sentence.  Criminal ECF No. [147] at 20–25.  The sentencing in this case was held over the
course of two days.  Criminal ECF Nos. [156]–[158].

On the first day of sentencing, the Government called Dr. Jordan Trecki and Special Agent
Angela Hofer, and Nahmani called Dr. Daniel Buffington.  ECF No. [156].  The Court also began
hearing objections to the PSI.  *Id.*  On the second day, Special Agent Angela Hofer was called
again to testify, and character witnesses for Nahmani also testified.  ECF No. [158].  After
considering the evidence and the objections to the PSI, the Court sentenced Nahmani to 240

months imprisonment, followed by three years supervised release, denying Nahmani's request for a downward variance. *See* Criminal ECF Nos. [158], [160], [178].

Nahmani appealed his conviction on various grounds. *See* Criminal ECF No. [162]. Specifically, Nahmani's challenges included:

> (1) the indictment was defective because it alleged Nahmani conspired to possess with intent to distribute controlled substances and controlled substance analogues but failed to identify the specific substances that were the object of the conspiracy; (2) evidence seized from his automobile should be suppressed on the basis that there was no probable cause at the time of the search to believe that he was engaged in illegal conduct; (3) cumulative errors[, including the admission of testimony from Kyle Hurley and the Government's expert, Jordan Trecki, and the Court's response to a jury question,] warranted a new trial; (4) the district court erred in applying a 20 year, as opposed to one year, statutory maximum when the indictment explicitly alleged a conspiracy to possess with intent to distribute a controlled substance analogue; and (5) the district court clearly erred in finding that the most closely related substance referenced in the drug equivalency tables in the United States Sentencing Guidelines was THC, not marijuana.

*United States v. Nahmani*, 696 Fed. App'x. 457, 461 (11th Cir. 2017). The Eleventh Circuit rejected each of the challenges and affirmed the judgment of the District Court. *Id.* at 469–79; *see also* Criminal ECF No. [188].

After the Eleventh Circuit's decision, Nahmani filed a motion for new trial on July 23, 2018, arguing that he was entitled to a new trial due to newly discovered evidence and for violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Criminal ECF No. [191]. Nahmani argued that a new trial was warranted based on new evidence that (1) "strongly suggest[ed] that the government provided the defense with altered records and training logs concerning K-9 Lex," which called into question the validity of the search warrant; (2) revealed that parts of Kyle Hurley's testimony were "demonstrably false"; and (3) the Government failed to disclose in the search warrant affidavit "that it had conducted a warrantless electronic surveillance of Nahmani

over an extended period of time," which "failed to reveal any incriminating evidence." *Id.* at 4–5. Additionally, Nahmani argued that the Government "failed to disclose substantial *Brady* material demonstrating that there was a disagreement among DEA chemists concerning the methodology used to determine whether three of the substances involved in this case were controlled substance analogues." *Id.* at 5. While that motion was pending, Nahmani filed the instant Motion on April 30, 2019. ECF No. [1]. Before a ruling on either motion was issued, then-President Donald J. Trump issued an Executive Grant of Clemency, commuting Nahmani's prison sentence to time served but leaving intact the three-year term of supervised release with all its conditions. Criminal ECF No. [198] at 1. Following the Grant of Clemency, Nahmani was released on July 31, 2019. Criminal ECF No. [199].

As to the Instant Motion, the Court ordered Defendant to show cause as to why the Motion was not moot given the clemency. ECF No. [5]. Nahmani responded that although he "has been deported and is now in Israel," the Motion was not moot. ECF No. [6] at 2. Nahmani contends that his Motion is meritorious and "he will prevail on the motion" and "his convictions will be reversed and the government will no longer continue the prosecution" such that "he will no longer suffer the consequences and stigma attendant to having a felony conviction on his record including the virtual elimination of his ability to re-enter the United States and other potential limitations on his civil liberties as well as the ability to travel to certain other countries." *Id.*

The District Court denied Nahmani's motion for new trial, Criminal ECF No. [191], on September 20, 2021, noting that: (1) the Eleventh Circuit found that "the search warrant affidavit was supported by a confidential informant's statement that Defendant kept his supply of spice in the storage space" and also "by direct surveillance of Defendant," in denying the motion, the magistrate judge cited additional factors beyond the dog alert that supported probable cause, and

even without this evidence, the Government has sufficient evidence to convict; (2) "the newly discovered evidence [as to Kyle Hurley] is merely impeaching in nature, and thus does not warrant a new trial" and "whether Defendant was Hurley's sole supplier of chemicals, or one of many, is seemingly irrelevant to the finding of Defendant's guilt;" (3) the fact that the search warrant did not include information from electronic surveillance is of no moment since "the search warrant application was based on ample other evidence;" and (4) Nahmani's *Brady* argument is misplaced because the opinion that Nahmani cites pertained to a different controlled substance analogue, and Nahmani "was aware of the DEA Office of Forensic Science chemist's dissenting opinion during cross-examination of the Government's expert witness."  Criminal ECF No. [201] at 4–13.

## II.     THE INSTANT MOTION

Nahmani filed the instant Motion seeking relief, pursuant to 28 U.S.C. § 2255, on eight different grounds.  Seven of those are based on the argument that his counsel was ineffective for: (1) failing to object to the jury instruction on the scienter element of the Analogue Act (Claim 1); (2) failing to request a specific unanimity instruction for the sole count in the Indictment (Claim 2); (3) failing to request an evidentiary hearing on how the drug weight attributable to Nahmani was computed at sentencing (Claim 3); (4) failing to investigate and raise legally sufficient grounds for challenging the probable cause for a search warrant of a storage unit (Claim 4); (5) failing to make specific objections or otherwise seek relief in connection with the testimony of Kyle Hurley (Claim 5); (6) failing to adequately conduct *voir dire* regarding potential jurors' views or experiences with controlled substances or analogues (Claim 6); and (7) suggesting that Nahmani send a supplier an e-mail and the subsequent failure to object to the Government's reliance on that e-mail for securing the Indictment and at trial (Claim 7).  ECF No. [1] at 13–31.  The final claim argues that his conviction should be vacated because the Analogue Act is unconstitutionally vague,

specifically as to the language that a controlled substance analogue be "substantially similar" to a controlled substance (Claim 8).  *Id.* at 32–33.

In its Response, the Government argues that the Motion contains conclusory arguments that do not meet the burden at hand, and that many of the arguments were in fact already litigated either before the trial court or on appeal.  ECF No. [8].  For example, as to Nahmani's ineffective assistance claims, the Government's Response argues that: (1) the District Court's instructions regarding scienter were accurate and taken directly from the controlling Supreme Court case on the issue (Claim 1); (2) a specific unanimity instruction was not required as the jury was not required to unanimously find which drugs Nahmani conspired to possess with intent to distribute (Claim 2); (3) any failure to request an evidentiary hearing regarding the drug weight computation is now moot and, in any event, the issue was litigated on appeal and there was an evidentiary hearing at sentencing (Claim 3); (4) the search warrant at issue was litigated in a pre-trial motion to suppress, on appeal, and in a post-trial motion for a new trial where the Court denied the identical arguments made here (Claim 4); (5) counsel zealously challenged Kyle Hurley's testimony before, during, and after trial (Claim 5); (6) there was no prejudice resulting from *voir dire*, as Nahmani cannot show that the outcome of the trial reasonably would have been different had counsel asked jurors of their views or experiences with controlled substances or analogues (Claim 6); and (7) counsel's advice that Nahmani send an e-mail to a former supplier, if true, was reasonable strategy, and, moreover, Nahmani cannot show prejudice since it was one of many e-mails used at trial (Claim 7).  *Id.* at 6–16.  The Government also responds that Nahmani's claim that the Analogue Act is unconstitutionally vague is meritless because other Circuit Courts have routinely held that it is not unconstitutionally vague (Claim 8).  *Id.* at 17 (citing cases).

### III.    ANALYSIS

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  *Id*.  To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

As to a claim for ineffective assistance of counsel, the Sixth Amendment gives criminal defendants the right to effective assistance of counsel.  U.S. Const., amend. VI.  A claim for ineffective assistance of counsel is subject to the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Specifically, *Strickland* requires that a criminal defendant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687–88).

As to the first prong, deficient performance is performance that falls "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  That is, actions that "no competent counsel would have taken."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing *Holladay v. Haley*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)).

However, in proving that counsel's actions were deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To that extent, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. *Chandler*, 218 F.3d at 1316 (footnote omitted) (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id*.

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. *Strickland*, 466 U.S. at 697. The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." *Chandler*, 218 F.3d at 1313 (alteration omitted) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)). The burden of persuasion on the Movant is preponderance of the evidence. *Id.*

As to the claim that the Analogue Act is constitutionally vague, a federal prisoner may challenge a sentence imposed in violation of federal constitutional law. 28 U.S.C. § 2255. However, a Section 2255 claim is procedurally barred when the petitioner fails to raise the claim

on direct appeal. *Samson v. United States*, 851 Fed. App'x. 950, 954 (11th Cir. 2021) (unpublished). A petitioner "can overcome this procedural bar by establishing cause and actual prejudice, or actual innocence." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### A.  Claim 1 – Jury Instruction

As to Claim 1, Nahmani argues that counsel was ineffective for "fail[ing] to object to an improper jury instruction on the scienter element of the Analogue Act." ECF No. [1] at 13. Specifically, Nahmani acknowledges that the jury instructions were adopted from *McFadden v. United States*, 576 U.S. 186 (2015), which clarified the scienter requirement under the Analogue Act, but alleges that the jury instructions "were provided in an order that turned the Supreme Court's ruling on its head." *Id.* at 16.  Nahmani argues that "[t]he instructions allowed the jury to convict Nahmani merely because he knew the identity of the substance he allegedly possessed, not the knowledge of those features" that render a substance a controlled substance analogue.  *Id.* Nahmani contends that the failure to object to the jury instructions rendered counsel ineffective because such conduct was based on "ignorance of the law." *Id.*  Moreover, Nahmani asserts that, given the "paucity of the evidence on this element," the Government was "unlikely" to satisfy knowledge under a proper instruction, as opposed to the instruction at trial which Nahmani argues lessened the Government's burden. *Id.* at 16–17.

In its Response, the Government argues that the language in the instructions was taken directly from *McFadden* and thus Movant's counsel cannot be ineffective for failing to object to an instruction that was based on the case that Nahmani concedes is the controlling case on the issue. ECF No. [8] at 8. The Government also contends that, contrary to Nahmani's argument, the District Court's instructions did not say that guilt is proven "**merely** by showing a defendant 'knew the specific analogue he was dealing with[.]'" *Id.* at 7 (emphasis in original) (citing ECF

No. [1] at 5).  Finally, the Government argues that "there is no indication [that a different instruction] would have changed the outcome."  *Id.* at 8.  As such, the Government argues that Nahmani has not satisfied his burden.

Given that the instructions correctly followed the law and that Nahmani's argument is otherwise based on his bare conclusion that the order of the instruction somehow created confusion, Claim 1 is without merit.  As an initial matter, it should be noted that since the time of Nahmani's trial, the Eleventh Circuit specifically addressed the knowledge requirement, as set forth in *McFadden*, in the context of jury instructions, reiterating that:

> [a]s *McFadden* makes clear, there are two ways the government can prove scienter.  One is by showing the defendant knew he was dealing with a controlled substance or controlled substance analogue.  *McFadden*, 135 S. Ct. at 2305.  But the second way is "by showing that the defendant knew the identity of the substance he possessed."  *Id.* at 2304.  This means the government can prove scienter with "evidence that the defendant knew the specific [controlled substance] analogue he was dealing with, even if he did not know its legal status as an analogue."  *Id.* at 2305.

*United States v. Benjamin*, 958 F.3d 1124, 1134 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 561 (2020).  Accordingly, knowledge can be established "by showing that the defendant knew the identity of the substance he possessed."  *McFadden*, 576 U.S. at 192; *see also United States v. Russa*, 807 Fed. App'x. 990, 996 (11th Cir. 2020) ("The majority's statement [in *McFadden*] was dicta . . . but as we have said before, 'there is dicta, and then there is Supreme Court dicta.'") (quoting *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006)).  Nahmani concedes that the District Court's instruction as to the scienter element of the Analogue Act mirrored this language.  *See* Criminal ECF No. [127] at 15 (instructing the jury that the "knowledge" requirement can be met one of two ways, the second of which is that "it can be established by evidence that the

Defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.").

*Strickland* requires that a movant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pease,* 240 F.3d at 941 (quoting *Strickland*, 466 U.S. at 687–88). Nahmani's argument that the *order* in which the instructions were given created some kind of confusion is not based on anything other than his speculation. Given that the language came directly from a relevant Supreme Court decision, Nahmani cannot meet the high bar to show that no reasonable attorney would have chosen not to object to the jury instruction. *See United States v. Williams*, 246 Fed. App'x. 626, 635 (11th Cir. 2007) (on direct appeal, rejecting ineffective assistance claim based on failure to object to jury instructions because "where jury has been properly instructed, counsel is not ineffective for failing to object to an instruction") (quoting *Lucas v. Wainwright,* 604 F.2d 373, 375 (5th Cir. 1979)); *see also Parker v. Sec'y, Florida Dept. of Corr.*, 555 Fed. App'x. 870, 875 (11th Cir. 2014) (As to the Section 2254 motion, "we cannot conclude that no reasonable trial attorney would have failed to object to the standard jury instruction that had yet to be questioned, much less disparaged, by any state appellate court").

### B.  Claim 2 – Jury Instruction

As to Claim 2, Nahmani argues that counsel was ineffective for "fail[ing] to request a specific unanimity instruction that would have required the jury to determine which substance or substances that Nahmani knowingly conspired to possess with intent to distribute." ECF No. [1] at 17–18. Nahmani concedes that the jury is ordinarily "not required to determine which controlled substance was the subject of the alleged conspiracy" but because the issue of whether the

substances in question were controlled substance analogues was for the jury to determine, the "only reasonable interpretation of the instructions in their entirety" would have permitted the jury to convict Nahmani even if it "did not unanimously find that Nahmani conspired to possess with the intent to distribute a controlled substance or a controlled substance analogue." *Id.* at 18–19. Nahmani argues that trial counsel's failure to request a specific unanimity instruction was ineffective because it lessened the Government's burden of proof and Nahmani was prejudiced because the jury "reasonably could have split on whether Nahmani knowingly conspired to possess with the intent to distribute any of those substances or whether a number of those substances qualified as a controlled substance analogue." *Id.* at 19.

The Government responds that Nahmani's claim has no merit and was also already litigated on appeal. ECF No. [8] at 8–9. First, the Government argues that "the jury was not required to unanimously find which drugs Nahmani conspired to possess with intent to distribute." *Id.* at 9 (citing *United States v. Medina*, 485 F.3d 1291, 1301 (11th Cir. 2007); *United States v. Carson*, 520 F. App'x. 874, 897–98 (11th Cir. 2013) (unpublished)). Second, the Government contends that the jury's question to the Court indicates that "the jury clearly understood that the conspiracy had two separate objects, one for one for controlled substances and one for controlled substance analogues" and that the Court's response was litigated on appeal and upheld by the Eleventh Circuit. *Id.* Finally, the Government contends that Nahmani does not show that additional arguments from trial counsel would have resulted in a different outcome. *Id.* at 10.

Here, too, Nahmani fails to meet his burden because his argument is based solely on speculation. The Eleventh Circuit makes clear that "where there is a conviction for a multi-object conspiracy, the evidence must only be sufficient to sustain a conviction for any one of the charged objectives." *Medina*, 485 F.3d at 1301. Nahmani advances no case requiring a specific unanimity

instruction because the objects of the conspiracy each contained more than one substance.  Instead, Nahmani simply asserts that the instructions, all of which were correct, could have led to some confusion that he now attempts to describe.  His argument alone is not sufficient to show that the instructions were deficient, much less that counsel was ineffective for not requesting something that was not required, or not requesting clarification of an issue that did not exist. The jury verdict entered at Nahmani's trial refutes such a notion, since the jury unanimously found that Nahmani was guilty as to the first object of the conspiracy, possession with intent to distribute controlled substances, in addition to the second object of the conspiracy concerning controlled substance analogues.  Criminal ECF No. [129].

Moreover, as the Government notes, the Eleventh Circuit considered the jury instructions on appeal and noted that "the district court properly explained the government's burden in establishing Nahmani's knowledge of conspiracy." *Nahmani*, 696 Fed. App'x. at 475.  Although the issue was raised in a slightly different manner, Nahmani argued that the District Court "gave a misleading answer to the jury's questions when the court failed to describe the knowledge required to convict Nahmani of conspiracy to possess with intent to distribute a controlled substance analogue." *Id.* at 474.  The Eleventh Circuit found that, "[v]iewing the instructions as a whole . . . we cannot say that the jury was misled." *Id.* at 475.  Specifically, the Eleventh Circuit noted that "[i]in its initial instructions to the jury, the district court properly explained the government's burden in establishing Nahmani's knowledge of the conspiracy." *Id.*  Nahmani's attempt to repackage this argument fails.  Nahmani has not met his burden to show that "no competent counsel would have" decided not to request such instruction, particularly considering the lack of authority requiring such an instruction and that the Eleventh Circuit approved of the instruction. *See Grayson*, 257 F.3d at 1216.  Likewise, Nahmani has failed to demonstrate how he was

prejudiced.  Indeed, both the Eleventh Circuit's approving language of the District Court's jury instructions and the jury's questions demonstrating an understanding that there were two separate objects of the conspiracy, *see* ECF No. [8] at 9, cast doubt that a request for different instructions would have changed the outcome of the proceedings.  Nahmani provides no support for his proposition otherwise, and so he cannot meet his burden.

### C.  Claim 3 – Computation Of The Drug Weight At Sentencing

Nahmani argues that trial counsel was ineffective for failing to request an evidentiary hearing at sentencing as to the computation of the drug weigh attributable to him.  ECF No. [1] at 19.  Nahmani contends that counsel was deficient for failing to object to the aggregate drug weight attributed to him for sentencing purposes and should have requested an evidentiary hearing wherein the Government would have been required to set forth evidence concerning the computation.  *Id.* at 20.  According to Nahmani, because of counsel's deficiency, he was sentenced based on the PSI and the "entire weight of synthetic cannabinoids attributable to him" but the PSI did not include any information concerning the analogue status of the different substances nor any information concerning the 1,100 kilograms of substance sold by Kyle Hurley in 2014.  *Id.* Nahmani contends a "'substance-by-substance" approach" was required.  *Id.* at 21.

The Government responds that this claim is moot given that Defendant has been released from prison. ECF No. [8] at 10.  Additionally, the Government argues that "the drug weight and precisely this issue was litigated on appeal."  *Id.*  Finally, the Government contends that the "sentencing hearing was in fact a lengthy evidentiary hearing that included this issue."  *Id.*

As a preliminary matter, this issue is moot given that it goes to the length of his sentence and not to his underlying conviction.  A case becomes moot "when [the case] no longer presents a live controversy with respect to which the court can give meaningful relief."  *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam) (citation and quotation marks omitted).  In

*Garcia v. Warden, Stewart Detention Center*, the movant challenged his detention, but he had already been released from custody and removed from the United States.  774 Fed. App'x. 522, 524 (11th Cir. 2019) (per curium).  The Eleventh Circuit determined that "there was no detention to challenge, and the court could give no relief with respect to it." *Id.*  Although the movant argued that there were collateral consequences related to his removal that rendered the controversy live, the Court noted that the consequences he raised (the inability to re-enter the country, and potential criminal prosecution if he did) flowed from his removal, not from his detention, and so there was no live controversy as to his detention.  *Id.*  Although "[c]ollateral consequences are presumed when a defendant challenges [his] underlying conviction," "no such presumption exists when a defendant challenges only an expired sentence, and the defendant bears 'the burden of identifying some ongoing collateral consequence that is traceable to the challenged portion of the sentence and likely to be redressed by a favorable judicial decision.'" *Shorter v. Warden*, 803 Fed. App'x. 332, 334 (11th Cir. 2020) (per curium) (unpublished) (quoting *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (cleaned up)); *see also Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995) (finding a Section 2241 petition not mooted by the prisoner's subsequent release where the prisoner was still serving a term of supervised release and success on the Section 2241 petition could change the supervised release portion of his sentence). Moreover, Nahmani has also failed to argue that his term of supervised release would have been favorably impacted by an evidentiary hearing on the weight of the substances.  *See United States v. Sewell*, 712 Fed. App'x. 917, 919 (11th Cir. 2017) (unpublished) (noting that there was no evidence in the record to suggest that the court would have imposed a more favorable term of supervised release had it imposed a shorter prison sentence).

On July 29, 2019, Nahmani's prison sentence was commuted "to time served and left intact and in effect the three-year term of supervised release with all its conditions." ECF No. [5]. In his Response to Order to Show Cause, Nahmani notes that he has been deported and contends that the issues raised in his Petition are not moot because he believes "that his convictions will be reversed" and as a result, "he will no longer suffer the consequences and stigma attendant to having a felony conviction on his record including the virtual elimination of his ability to re-enter the United States and other potential limitations on his civil liberties as well as the ability to travel to certain other countries." ECF No. [6] at 2. The manner in which his sentence was computed, however, has no impact on any of these remaining concerns.

Nevertheless, even if the issue were not moot, the record is clear that the issue of the weight of substances attributable to Nahmani was in fact litigated at the sentencing hearing. *See* Criminal ECF Nos. [177], [178]. Given that the weight of the substances was litigated, Nahmani fails to explain why counsel's questions and arguments at sentencing on this issue were insufficient or otherwise unreasonable strategy, and how the outcome of the proceedings would likely have changed had counsel acted differently. *See Strickland*, 466 U.S. at 689 (noting that the movant bears the burden of overcoming the presumption that counsel's actions were "sound trial strategy").

*Strickland* requires that Nahmani show both that his counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pease,* 240 F.3d at 941 (quoting *Strickland*, 466 U.S. at 687–88). Nahmani fails to show deficient performance, and he fails to show any prejudice, putting forth no argument as to how an evidentiary hearing would have impacted his sentence.

### D. Claim 4 – Search Warrant

Nahmani argues that his counsel was constitutionally ineffective for "failing to investigate and raise the legally sufficient grounds for challenging the probable cause for, or raising a challenge pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978) to the issuance of the search warrant executed on a storage unit leased in the name of Ronen Nahmani."  ECF No. [1] at 21.  Essentially, Nahmani contends that the search warrant that resulted in evidence obtained from a storage unit lacked probable cause, and had counsel appropriately investigated, counsel would have discovered falsities in the warrant that would require Nahmani's motion to suppress that evidence to be granted.  *See id.* at 21–26.  Nahmani argues that the items seized were "the foundation of [the Government's] case."  *Id.* at 21–22.  Nahmani contends that counsel was ineffective for "fail[ing] to investigate and learn that K9 Lex and his handler, Detective Davis . . . were not . . . [properly] certified" at the time of the search and that there are "altered records concerning K-9 Lex's training," evidenced by "significant discrepancies" in the records.  *Id.* at 22–23.  According to Nahmani, "the fact that [] K-9 Lex and Davis were not certified as the search warrant affidavit alleged . . . was a material falsehood that would eviscerate any probable cause for the issuance of a search warrant based on the dog alert and further provide a viable challenge under *Franks*."  *Id.* at 23–24.  Nahmani argues that "the dog alert on the storage unit" was "the only thing that saved" the affidavit such that the Court found there was probable cause and accordingly denied his motion to suppress.  *Id.* at 24.  Nahmani contends that effective investigation by counsel would have revealed to the Court that: (1) K-9 Lex and Detective Davis were not certified as of the date of the affidavit and warrant; (2) statements concerning Detective Davis' training were false or misleading; (3) there may have been more than one dog named "Lex" and the records of Lex's training were altered; and (4) "the entire row of storage units in which

Nahmani's unit was located, shared a common interior ceiling—there was an approximate one foot gap between the interior dividing walls and the ceiling that allowed air to freely circulate between the various units" such that an odor from one unit could have spread to another. *Id.* at 24–26. Nahmani contends that if these falsities had been stricken under *Franks*, the affidavit would have lacked probable cause such that suppression was required. *Id.* at 26.

The Government responds that trial counsel engaged in "extensive, thorough, and rigorous efforts . . . at every stage of this case to challenge the search warrant." ECF No. [8] at 10. The Government argues that counsel raised this issue in a motion to suppress before trial, during trial, on appeal, and in a post-appeal motion for a new trial. *Id.* Moreover, the Government contends that the arguments raised in the instant Motion "are identical to [those] made relating to the storage unit search warrant in his motion for new trial post-appeal." *Id.* at 11. The Government incorporates the Court's prior Order denying Nahmani's motion for a new trial, particularly noting that the Court had determined that "the outcome of the search warrant litigation would have been the same regardless of the additional arguments and evidence that the Movant now claims he has." *Id.* (citing Criminal ECF No. [201]).

Nahmani's argument is without merit. As the Government notes, Nahmani's counsel did, in fact, challenge the search warrant affidavit. Counsel moved to suppress the evidence, arguing that the affidavit contained "reckless omissions as well as a false statement." Criminal ECF No. [50] at 2. In the motion to suppress, counsel argued that K9 Lex's training records demonstrated that he was "never trained nor tested concerning scent packs for any of the alleged synthetic marijuana present in the warehouse." *Id.* at 3. Nahmani also challenged the sufficiency of the search warrant affidavit on appeal, and the Eleventh Circuit found that there was probable cause to support the warrant." *Nahmani*, 696 F. App'x. at 471 n.18. Finally, Nahmani challenged the

search warrant affidavit in his motion for new trial.  Criminal ECF No. [191].  Nahmani argued that there was evidence to suggest that the records of K-9 Lex had been altered and that Lex and his handler, Detective Davis, were not properly certified.  *See id.* at 5–9.  Nahmani seemingly argues that the fact that this issue has already been litigated/reviewed on *three* occasions does not matter because there is additional new evidence in support of his position.  But the arguments that Nahmani raises in the instant Motion are the same as those he raised in his motion for new trial, Criminal ECF No. [191], which the Court already found meritless, Criminal ECF No. [201].  Nahmani's counsel litigated the sufficiency of the search warrant affidavit throughout the proceedings and questioned the reliability of K-9 Lex and Detective Davis.  Because his counsel did what Nahmani argues they should have, his claim of ineffective assistance of counsel fails.

### E.   Claim 5 – Kyle Hurley's Testimony

Nahmani argues that counsel provided ineffective assistance at trial with respect to the testimony of Kyle Hurley.  ECF No. [1] at 26.  Specifically, Nahmani argues that counsel "fail[ed] to interpose timely specific objections, motions for mistrial and other relief, and requests for curative instructions" concerning Hurley's testimony about: (1) Hurley's purchase of purported AB-Fubinaca from Nahmani before its designation as a controlled substance; (2) Hurley's opinion based on hearsay expert findings that the substance "was judicially found to be AB Fubinaca;" and (3) Hurley's sales of AB-Fubinaca despite the fact that "the record was undisputed that Nahmani had nothing to do with such sales."  *Id.* at 26–27.

The Government responds that Nahmani's claim here amounts to an objection to "Kyle Hurley's testimony as a whole, which was the same position that trial and appellate counsel took zealously throughout this case before, during, and after trial."  ECF No. [8] at 11.  The Government also argues that Nahmani fails to cite to any record evidence, instead making "bare and conclusory"

allegations that are insufficient to merit consideration. *Id.* Moreover, the Government argues that the issue of Kyle Hurley's testimony was already litigated "before, during, and after trial." *Id.* at 12. According to the Government, the Eleventh Circuit's rulings concerning Kyle Hurley's testimony on Nahmani's appeal "show that any additional arguments that Movant is attempting to make would not have changed the proceedings" and moreover, Nahmani "does not explain how additional arguments against Hurley's testimony [or a motion for mistrial] would have affected the trial." *Id.* at 13–14.

Again, Nahmani fails to meet his burden as to this claim. First, as the Government notes, the claim lacks any citation to the record, and instead lists bald assertions, without more. *See Griffin v. United States*, No. 17-15763-D, 2019 WL 2744723, at *1 (11th Cir. Feb. 19, 2019) ("Bare, conclusory allegations of ineffective assistance of counsel are insufficient to satisfy the *Strickland* test.") (citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)). Such a challenge is not sufficient.

Second, the issues regarding Mr. Hurley's testimony were extensively litigated. On appeal, Nahmani objected to Mr. Hurley's testimony and the Eleventh Circuit determined that the District Court did not err in allowing the testimony. *Nahmani*, 696 Fed. App'x. at 472–73. Specifically, the Eleventh Circuit: (1) "reject[ed] Nahmani's assertion that Hurley's testimony only covered acts that occurred outside the conspiracy period" because "Nahmani also tried to sell synthetic cannabinoids to Hurley on March 28, which is 'on or about April 1,' as the indictment alleged;" (2) found that Hurley's testimony "completed the story of Nahmani's crime" and thus was properly admitted, contrary to Nahmani's argument that it was inadmissible character evidence; and (3) found that the District Court properly admitted Hurley's testimony "about investigative or judicial findings" because "Hurley was permitted to disclose his guilty plea to the jury to blunt the attack

on Hurley's credibility during cross-examination." *Id.* Given that this issue was already litigated and resolved in favor of the Government, the Court here is hard-pressed to find that any objection to that testimony would have had any impact on the outcome. As such, Nahmani has failed to meet his high burden to show that counsel's decisions concerning Kyle Hurley's testimony constituted unreasonable performance. *See Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

Moreover, as the Government notes, Nahmani makes no argument as to prejudice, failing to proffer any explanation for how "additional arguments against Hurley's testimony would have affected the trial." ECF No. [8] at 14. The Eleventh Circuit's affirmance of the District Court's admission of Hurley's testimony "show[s] that any additional arguments that Movant is attempting to make would not have changed the proceedings" and so Nahmani fails to "show that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 13 (quoting *Strickland*, 466 U.S. at 694).

### F. Claim 6 – *Voir Dire*

Nahmani argues that counsel's trial performance was ineffective because counsel failed to ask potential jurors about their views and experiences with controlled substances and controlled substance analogues during *voir dire*. ECF No. [1] at 28. According to Nahmani, counsel was aware that the Government would present testimony at trial, via its expert Jordan Trecki, of "the horrific and sometimes fatal consequences of using synthetic cannabinoids." *Id.* at 29. Nahmani notes that counsel sought to exclude such testimony after Trecki testified at a pretrial hearing, "arguing that it was inflammatory and highly prejudicial" and yet in spite of this awareness of the prejudicial testimony, "trial counsel made no effort to determine whether the jurors . . . could still

be fair and impartial despite the adverse pretrial publicity concerning synthetic cannabinoids" and Trecki's testimony. *Id.* Nahmani argues that counsel's failure to ask or request that the judge ask potential jurors about their knowledge and exposure to cannabinoids, including as to publicity concerning cannabinoids and experiences with family or friends being impacted, was ineffective assistance. *Id.* at 29–30.

The Government responds that Nahmani's claims are "bare and conclusory," as he fails to provide legal authority or explain how he was prejudiced and how the outcome of the trial would have been different. ECF No. [8] at 14. Specifically, the Government notes that "[t]here is no citation to the record, no citation to the District Court's voir dire, and no citation to the law." *Id.* at 15. The Government asserts that the purpose of *voir dire* is selection of "an impartial jury capable of fairly deciding the issues presented by applying the law." *Id.* at 14 (citing *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980)). Moreover, the Government notes that "[t]he method of conducting the voir dire is left to the sound discretion of the trial court and will be upheld unless an abuse of discretion is found." *Id.* (citing *United States v. Butera*, 677 F.2d 1376, 1383 (11th Cir. 1982)). Specifically, the Government notes that "[i]t is not an abuse of . . . discretion to refuse to allow inquiries of jurors as to whether they can accept certain propositions of law." *Id.* at 15 (quoting *United States v. Ledee*, 549 F.2d 990, 992 (5th Cir. 1977)). The Government contends that Nahmani fails to show that the outcome of the trial would have been different and cites to Eleventh Circuit authority for the proposition that the trial court is afforded discretion in conducting *voir dire*, including "whether or not to submit suggested questions to the jury." *Id.* at 14 (quoting *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979)).

"[E]ffective assistance of counsel is required during the *voir dire* process." *Lee v. United States*, No. 12-20002-CR, 2016 WL 11248978, at *9 (S.D. Fla. Apr. 13, 2016), *report and*

*recommendation adopted*, No. 15-20854-CIV, 2017 WL 6048807 (S.D. Fla. Dec. 6, 2017) (citing *Brown v. Jones*, 255 F.3d 1273, 1278–79 (11th Cir. 2001)).  However, "[b]ecause *voir dire* involves considerations of strategy, deference is to be given to counsel's actions during *voir dire*." *Id.* (citing *United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996)).  To be considered ineffective, a movant must show that counsel's assistance during *voir dire* constituted actions that were "so ill chosen that it permeates the entire trial with obvious unfairness." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (citation and quotations omitted).  Additionally, "for a movant to satisfy *Strickland's* prejudice prong, he must demonstrate that the juror selection process resulted in actual bias against him." *Lee*, 2016 WL 11248978, at *10 (citing *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001)).

Nahmani does not allege how the outcome of the trial would have differed had the Court, at the request of counsel, conducted *voir dire* differently.  Nahmani does not even cite to the record indicating how *voir dire* was conducted.  Like the movant in *Lee*, Nahmani's "allegations are speculative, conclusory, and wholly unsupported by anything other than the movant's present self-serving statements" such that he "has failed to establish deficient performance or prejudice under [*Strickland*]." *See id.*  Nahmani's claims cannot overcome the presumption in favor of counsel that such strategy at *voir dire*, whatever it was, was a reasonable tactical decision.

### G.  Claim 7 – Counsel's Advice To Send An E-mail To His Supplier

Nahmani also argues that he was prejudiced due to counsel's ineffective assistance in directing him to send an e-mail to a supplier of AB-Fubinaca to verify when Nahmani last ordered the substance, which he contends contributed to securing the indictment against him as well as a guilty verdict at trial.  ECF No. [1] at 30.  Nahmani argues that his counsel failed to inform him that the prosecutor had requested that the e-mail be sent, or that the e-mail could be used against

him when charging and trying him.  *Id.* at 31.  According to Nahmani, "he would not have sent the email absent some conferral of use and derivative use immunity or similar agreement that the email and the response could not be used against him."  *Id.*  Nahmani notes that counsel failed to object to use of the e-mail as evidence.  *Id.*

The Government responds that "even if this one email were removed from the trial, the evidence would have overwhelmingly remained unchanged" given that the "search warrant application yielded . . . hundreds of emails," and numerous other e-mails, including ones discussing AB-Fubinaca, were used at trial.  ECF No. [8] at 15.  According to the Government, counsel objected to use of the e-mails at trial extensively, contrary to Nahmani's contention.  *Id.* at 16.  Moreover, the Government argues that counsel's advice to send the e-mail, if true, was reasonable strategy.  *Id.*

Nahmani's claim as to his counsel's advice has no merit.  First, Nahmani "cannot establish a violation of his constitutional right to the effective assistance of counsel prior to his being charged for [a crime] because his Sixth Amendment right to counsel as to that offense had not yet attached."  *Philmore v. McNeil*, 575 F.3d 1251, 1257 (11th Cir. 2009).  Specifically, the right to counsel under the Sixth Amendment "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Id.*  Like Nahmani, the movant in *Philmore* argued that his counsel was constitutionally ineffective for advice regarding cooperation with the government before being charged.  *See id.* at 1255 ("Philmore contends that [counsel] deprived him of the effective assistance of counsel prior to his being charged for [] murder . . . Philmore contends that, without first conducting any independent investigation or securing a concession, [counsel] foolishly advised Philmore to cooperate with the police and give statements

in counsel's absence.").  Because his constitutional right to effective assistance of counsel did not attach prior to the Indictment, Nahmani cannot prevail on his claim based on counsel's pre-indictment advice to send the e-mail.

Second, as to his argument that counsel failed to object to the Government's use of the e-mail at trial, "[a] failure to object could be ineffective assistance of counsel or it could be an appropriate trial strategy." *United States v. Toyer*, 274 Fed. App'x. 844, 848 (11th Cir. 2008); *see also Fugate v. Head,* 261 F.3d 1206, 1223–24 (11th Cir. 2001) (addressing a federal habeas petition and holding that, since counsel's reason for not objecting was strategic, there was no ineffective assistance of counsel).  The undersigned need not address the question of why counsel did not object, as Nahmani cannot meet the second *Strickland* prong showing that he was prejudiced by any failure to object.  Indeed, even if counsel should have objected to the e-mail, there was substantial evidence against Nahmani presented at trial.  Nahmani cannot show "a reasonable probability" that the outcome of his trial would have differed had counsel objected to the admission of one e-mail.  *See Pease,* 240 F.3d at 941.  In short, Nahmani fails to show prejudice since he makes no argument as to how counsel's failure to object to the use of the e-mail at trial would reasonably have led to a different outcome.

### H.  Claim 8 – Constitutional Vagueness

Nahmani's final argument is that the Analogue Act is unconstitutionally vague and thus his conviction should be vacated.  ECF No. [1] at 32.  Specifically, Nahmani contends that "'[s]ubstantially similar' is meaningless in chemistry or any branch of science, and the Analogue Act provides the jury no explanation to guide its application to issues of organic chemistry and pharmacology."  *Id.*  Nahmani argues that this results in the jury having "unwarranted and unfettered discretion to enforce the Analogue Act as it sees fit," usurping the power of Congress.

*Id.*  Nahmani contends that the Analogue Act's vagueness only allows a defendant to engage in "guesswork" because it is "[impossible] to know in advance of any trial a hypothetical jury's opinion of whether a substance is a controlled substance analogue." *Id.*  According to Nahmani, he properly seeks relief because claims that a statute is unconstitutionally vague are excused from procedural default and because this claim can be considered an ineffective assistance of counsel claim. *Id.* at 32–33.

The Government responds that the unconstitutionally vague claim is meritless.  ECF No. [8] at 17.  The Government argues that although the Eleventh Circuit has not addressed the issue, other Circuit Courts that have considered this same challenge have held that the Analogue Act is not unconstitutionally vague.  *Id.* (citing cases).  As such, the Government maintains that the claim should be denied.  *Id.*

Because Nahmani's constitutional vagueness argument was available to him, but he did not raise it at trial or on direct appeal, he must demonstrate either cause and actual prejudice or actual innocence.  *See Samson*, 851 Fed. App'x. at 954.  Nahmani does not argue that his claim is excused from procedural default based on cause and actual prejudice.  Rather, he argues that his claim "is excused from procedural default because it inherently demonstrates a movant's actual innocence."  ECF No. [1] at 32.  However, "[t]he actual innocence exception to the procedural default bar is exceedingly narrow in scope as it concerns a petitioner's actual innocence rather than his legal innocence.  Actual innocence means factual innocence, not mere legal innocence." *Samson*, 851 Fed. App'x. at 955 (quoting *Granda v. United States*, 990 F.3d 1292 (11th Cir. 2021)).  Because Nahmani merely argues, in one sentence, that he is *legally* innocent, but makes no allegation as to his *factual* innocence, his claim of constitutional vagueness is procedurally barred.

Moreover, even if Nahmani's claim was not procedurally barred, it would fail on the merits. Although the Eleventh Circuit has not addressed the issue of whether the Analogue Act is unconstitutionally vague due to the "substantially similar language," as the Government notes, other Circuits have consistently found that it is not. *See, e.g. United States v. Requena*, 980 F.3d 30, 40–41 (2d Cir. 2020), *cert. denied sub nom. Raymond v. United States*, 141 S. Ct. 2761 (2021) ("We have on several occasions upheld the Analogue Act's definition of a 'controlled substance analogue' against as-applied vagueness challenges."); *United States v. Palmer*, 917 F.3d 1035, 1038 (8th Cir. 2019) ("[T]he Analogue Act has presented our court and our sister circuits little interpretive difficulty . . . . To the extent that [movants] argue that the language of the Analogue Act itself [is] unconstitutionally void for vagueness in violation of the Fifth Amendment, their argument is foreclosed.") (internal citation and quotations omitted); *United States v. Turcotte*, 405 F.3d 515, 531–32 (7th Cir. 2005), *abrogated on other grounds by United States v. Novak*, 841 F.3d 721, 729 (7th Cir. 2016) ("As an initial matter, we note that our ruling here confirming that the Analogue Provision carries a robust scienter requirement casts doubt on [movant's] vagueness challenge from the outset . . . . Yet even leaving aside the implications of our scienter ruling, the Analogue Provision seems to us sufficiently clear by its own terms.  The circuit courts considering this issue have unanimously held that the [Controlled Substances Act's] Analogue Provision is not unconstitutionally vague.").

Finally, although Nahmani argues that his constitutional vagueness claims can alternatively be viewed as a claim for ineffective assistance of counsel for counsel's failure to raise the argument before trial, he has not met his burden under *Strickland*.  The lone sentence that Nahmani devotes to his argument that counsel was constitutionally defective states that "counsel was deficient because it was unreasonable not to recognize the vague nature of the Analogue Act on its face, and

Nahmani was prejudiced because he was convicted of an offense without the constitutionally mandated notice."  ECF No. [1] at 33.  Nahmani sets forth nothing more than a bald assertion, which is insufficient to demonstrate that counsel was constitutionally deficient.  *See Griffin*, 2019 WL 2744723, at *1.  Nor does he explain how the outcome of the proceedings would reasonably have differed to demonstrate prejudice.  Accordingly, Nahmani fails to meet his burden of showing ineffective assistance for counsel's failure to argue that the Analogue Act is unconstitutionally vague.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Nahmani's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. [1], be **DENIED**.

## V.    CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).  This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*  Upon consideration of the record, this Court should deny

a certificate of appealability. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Judge pursuant to the Objections section below.

## VI.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3–1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on May 25, 2022.

**JACQUELINE BECERRA**
**United States Magistrate Judge**